IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:12CR131-01 |
| | ) | |
| JOSE ARMANDO BRAN, | ) | |
|             Defendant | ) | |
| | ) | |

**DEFENDANT'S MOTION TO EXCLUDE PROPOSED
GOVERNMENT GANG EXPERT TESTIMONY**

COMES NOW Jose Armando Bran, by counsel, and requests this Court exclude the government's proposed gang expert testimony in this case.

*Introduction*

The prosecution has alleged that Mr. Bran and Ms. San Jose were part a Richmond clique of MS-13, an alleged international gang. Both have been charged with RICO conspiracy and violations of murder in aid of racketeering and use of a firearm in furtherance of a crime of violence. Mr. Bran has been charged in two additional counts, alleging RICO conspiracy to commit murder and maiming in aid of racketeering.

In order for the government to prevail on these charges it must prove the predicate acts, but also the existence of an enterprise for RICO purposes. Specifically, the government must demonstrate that MS-13 or the local clique was a RICO enterprise under 18 U.S.C. § 1959 (2) — which requires proof that MS-13 or the local clique had the following structural features: (1) a purpose; (2) a relationship between those associated with MS-13; and (3) longevity sufficient to permit MS-13's associates to pursue its purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009). Moreover, the government must also show that defendants perpetrated the charged

violent crimes for the purpose of gaining entrance to or maintaining and increasing position in MS-13 or the local clique. *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1994)(*quoting*, *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992); *see also*, *United States v. Johnson*, 219 F.3d 358 n. 7 (4th Cir. 2000).

The government's proposed expert has extensive law enforcement experience with MS-13. Experience alone, however, is not all that is required to support his testimony. First, expert testimony is only appropriate where the matters touched upon are beyond the average understanding of a layperson. The proposed testimony would simply be the experts opinion of the activities and organization of MS-13 and by allowing the government to prove up elements of the offense through police opinion, this would shift the responsibility for assessing fact evidence from the jury to the police.

More specifically, allowing this testimony would allow the government to prosecute by simple syllogism: first, through expert opinion, the government would show MS-13 was a violent racketeering organization. Second, the government would show any given defendant was a member or associate of MS-13. In this way, the only individualized facts that would need to be proven was that the defendants had a few tattoos indicating that he or she was a member of MS-13. Again, RICO requires proof of an *enterprise* - and proof of murder and other predicate acts. These elements are amenable to ordinary fact proof of the type readily understood by juries without the need for specialized police opinions. Certainly the government has alleged and will provide fact proof of the murder and other predicate acts. However, if the expert testimony is allowed, a juror could vote to convict merely on the strength of the opinion evidence plus some MS-13 tattoos. Exacerbating matters, the proposed testimony is so riddled with references to

"violence," as to be highly prejudicial as almost all of the proffer appears to be based upon "training and experience," and nothing that relates to the particular "clique" in question in this case. In addition, it appears that much of his expert knowledge is based on inadmissible hearsay from the street or other officers. *See United States v. Cerna,* 2010 U.S. Dist. LEXIS 62907, *20-23 (N.D. Ca., June 8, 2010)

**1. GOVERNMENT EXPERT**

Detective Claudio Saa's proposed expert testimony covers the existence, structure, history, and organization of MS-13; the violent nature of MS-13; the typical behavior and proclivities of MS-13 members; the crimes that MS-13 members commit; and MS-13 slang, styles of dress, colors, and symbols. The opinions would prove up all elements of the government's RICO conspiracy charge against the defendants, save only for proving that each defendant was a gang member. Moreover, the proposed testimony would advise the jury that any violent crimes committed by individuals associated with MS-13 were done to further a RICO enterprise. However, this is a fact that the jury needs to decide in this case. This becomes particularly important in a RICO case because much of the section 1959 litigation has focused in the notion that it is no defense to such a charge that the defendant may have harbored multiple motivations for his violent act.

> We agree with the Second Circuit that this purpose can be shown by proof that "a defendant who holds a position in a RICO enterprise ... committed an underlying crime of violence with a motive of retaining or enhancing that position"; that such "self-promotion" need not be "the defendant's only or primary concern"; and that evidence suffices if from it a jury "could properly infer that the defendant committed his violent crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance[] of that membership."

*Tipton*, 90 F.3d at 891. *See also Wilson*, 116 F.3d at 1078 ("Self-promotion need not be the defendant's sole or primary concern; rather, Congress intended to proscribe violent acts committed as an integral aspect of membership in such enterprises."). Even so, a section 1959 conviction cannot be sustained if the enterprise-related motivation is a trivial component to the defendant's overall state of mind: "although the law does not require that the defendant's gang-related purpose be his primary or sole purpose, it does require that his purpose be more than merely incidental." *See Banks*, 514 F.3d at 968. Thus, in construing section 1959's mens rea element, the law does not require that the enterprise-related motivation be "the defendant's only or primary concern," *see Tipton*, 90 F.3d at 891, but it must nonetheless require that the enterprise-related motivation be a substantial one. *See id.* (affirming based on a finding that participation in the violent act in question "was *critical* to the maintenance of one's position in the enterprise") (emphasis added).

Because section 1959 is intended to reach those violent acts that are "integral" to the defendant's membership in the enterprise, section 1959's mens rea element must be construed to capture exactly that sort of violent offense: the defendant must perceive the act of violence as a consequential (or, put another way, material) one, one that actually could affect his ability to maintain or increase his status within the enterprise. Indeed, such a construction is compelled by the unanimous recognition of the courts that the violent crime must be "committed as an integral aspect of membership" in the enterprise. *See, e.g., Fiel*, 35 F.3d at 1004. *Accord Banks*, 514 F.3d at 967; *Smith*, 413 F.3d at 1277; *United States v. Mapp*, 170 F.3d 328, 336 (2d Cir. 1999); *Wilson*, 116 F.3d at 1078.

Without ever actually proving up a single such instance, Detective Saa's proposed opinions are filled with words and words and phrases depicting violence, death, crimes, illegality, and criminals. The proposed testimony provides a quick path to conviction in this case because it paints MS-13 as an enterprise and then says Mr. Bran was part of the enterprise so therefore he must be guilty since all acts committed by members of MS-13 are done in furtherance of the enterprise.  It takes away from the jury the very issue they have to decide, the mens rea issue discussed in the previous paragraphs.  Assuming the jury were to conclude that Osbin Hernandez-Gonzalez was killed by members of MS-13, they then have to still decide what if any role Mr. Bran played in the murder, and whether or not that role was "integral" to his membership in MS-13. The proposed testimony takes this issue from the jury, and gives it a law enforcement stamp of approval.  The proposed testimony should be excluded.

### A. Reliability and Qualifications of the Proffered Expert

Rule 702 of the Federal Rules of Evidence allows for opinion testimony by an expert. According to the Rule:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Rule 702 imposes a "gatekeeping" obligation on the trial judge to "ensure that any and all scientific testimony. . . is not only relevant, but reliable. *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 589 (1993). In executing this gatekeeping responsibility, district courts have broad latitude in determining *how* to test an expert's reliability. *United States v.*

5

*Hankey*, 203 F.3d 1160,1168 (9th Cir. 2000); *See also*, Placido G. Gomez, *It Is Not So Simply Because an Expert Says It Is So: The Reliability of Gang Expert Testimony Regarding Membership in Criminal Street Gangs: Pushing the Limits of Texas Rule of Evidence 702*, 34 St. Mary's L.J. 581, 609-621 (2003)(describing the manner in which the criteria lack reliability); Jeffrey J. Mayer, *Individual Moral Responsibility and the Criminalization of Youth Gangs*, 28 Wake Forest L.Rev. 943, 965-67 (1993) (noting that the various criteria were "invariably over broad," notable for "their circuitry and potential for abuse" and amount to "little more than licenses to arrest or control youths in the absence of any articulable suspicion"); Susan L. Burrell, *Gang Evidence: Issues for Criminal Defense*, 30 Santa Clara L.Rev. 739, 773 (1990) ("There is no way for an individual officer to become qualified to render [a gang] expert opinion, because there is no reliable, generally accepted body of knowledge upon which the opinion may rest.").

In this case, the proposed government gang expert purports to have a broad knowledge of MS-13, but he has no specific academic training or education related to gangs, psychology, or sociology, and has not published academic articles. Thus, his knowledge is solely based upon his experience as a law enforcement officer in Northern Virginia. He has no specific knowledge concerning the alleged Richmond clique of the MS-13 charged in the pending indictment. The problem with this proffer of broad testimony is that the government does not have to prove that MS-13 is an international gang in this case, which is the only expert opinion that Detective Saa can give. Instead, the government must prove that this unique MS-13 clique has the purpose, a relationship between the members and the longevity sufficient to permit the members to pursue its purpose. General opinions about MS-13 are not necessary in this case and, in fact, is irrelevant. In addition, this expert would have to admit that there are local variations between the

cliques and not all practices are universal which makes the general opinions about the MS-13 gang as a whole completely irrelevant and highly prejudicial without any probative value.[1] Detective Saa has no personal knowledge about the Richmond MS-13 clique charged in this indictment nor is he familiar with the "management team" or the local twists of this clique. Therefore, his proposed expert opinion on MS-13 is not relevant in this case. *United States v. Cerna*, 2010 U.S. Dist. LEXIS 62907, *25 (N.D. Cal., June 8, 2010)

If the Court is not persuaded by these arguments, Mr. Bran would request that the Court hold a *Daubert* hearing so that the proposed expert can be examined on his proposed testimony and the Court can decide whether or not it is relevant and reliable. *See*, *Kumho Tire Co, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). Such a hearing will also allow counsel to further explore the bases of the experts' opinions.

**B. Not Assisting the Trier of Fact**

Rule 702 only allows expert opinion where "specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue." In other words, expert testimony is only appropriate where "untrained laymen" would be unable to intelligently comprehend the fact evidence and determine the particular issue without the guidance of an expert. Fed. R. Evid. 702 Advisory Committee Note. This is because the jury — not a police expert — must serve as the fact finder. To this end, the testimony must properly "fit" the facts of the case. That is, the trial

---

[1] An example given by many gang experts in describing MS-13 is that it is like McDonalds. They will say that there are McDonald's franchises all over the world that use the same symbols, colors and menus, but there are regional variations and the local management may have different rules and different regulations and a different way of operating certain things. *See* Testimony of Sergeant George Norris of the Prince George County Maryland Police Department in the case of *Commonwealth v. Luis Ramirez Cabello* p. 152-155. (attached). *See also* testimony of Detective Flores in *United States v. Umana*, 3:08CR134-RJC (W.D.N.C.).

7

judge must decide "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Lester*, 254 F.Supp. 2d 602, 606 (E.D. Va. 2003)(citing *Daubert* at 591) (quoting, *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985)); *see United States v. Dorsey,* 45 F.3d 809, 813 (4th Cir. 1995) (quoting *Daubert,* 509 U.S. at 590-91).

While the Fourth Circuit has upheld the admission of expert testimony in other MS-13 cases, it has not been asked to address the issue of whether or not the gang testimony assisted the trier of fact. The challenges brought before the Fourth Circuit have been on the reliability of the expert and potential Sixth Amendment, confrontation issues. *See United States v. Palacios*, 677 F.3d 234 (4th Cir. 2012). In light of the absence of controlling authority on the issue of whether or not the proffered testimony will assist the trier of fact, Mr. Bran urges the Court to consider the Second Circuit's approach in *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008). The *Mejia* decision addressed the dangers inherent in police officer gang testimony and the importance of properly screening the testimony. In coming to this determination, the Second Circuit found:

> [I]t is a little too convenient that the Government has found an individual who is expert on precisely those facts that the Government must prove to secure a guilty verdict — even more so when that expert happens to be one of the Government's own investigators. . . . When the Government skips the intermediate steps and proceeds from internal expertise to trial, and when those officer experts come to court and simply disgorge their factual knowledge to the jury, the experts are no longer aiding the jury in factfinding; they are instructing the jury on the existence of the facts needed to satisfy the elements of the charged offense.

*Id*. at 191. Like the case at bar, *Mejia* involved a RICO prosecution of MS-13 members and the police officer gang expert was proffered to testify regarding MS-13's structure, derivation, background, history, conflicts, hierarchy, cliques, methods, activities, and slang. *Id*. at 186–87.

8

All of the enterprise opinions proffered by Detective Saa involve facts well within the understanding of the average layperson. In addition, while the government's proffered expert testimony generally concerns the MS-13 structure and organization, this case does not concern an elaborate money laundering or drug trafficking scheme as was involved in *Mejia*. The structure in the Richmond MS-13 clique was simple and the alleged racketeering acts were straightforward. There are no wiretaps or recorded phone calls in this case that will need to be explained or interpreted by an expert. No expert testimony is needed for a layperson to understand the alleged structure and organization of MS-13. And, if the government believes this information is relevant and necessary, it can be elicited from its cooperators and other fact witnesses in this case who have first-hand experience with the Richmond clique.

The government's proffered testimony in this case is the very type of expert testimony that the Second Circuit found to be unhelpful to a jury. If Detective Saa is permitted to testify about matters that will *not* assist the jury, his testimony will be no more than police argument masquerading as sworn evidence. As the Second Circuit explained:

> If the officer expert strays beyond the bounds of appropriately "expert" matters, that officer becomes, rather than a sociologist describing the inner workings of a closed community, a chronicler of the recent past whose pronouncements on elements of the charged offense serve as shortcuts to proving guilt.

*Mejia*, 545 F.3d at 190. In other words, expert testimony must serve as an aid to understanding facts — not a summary of the government's best case — should all of those facts exist in the case.

While the government must prove the enterprise elements, the government could do so via ordinary fact proof — cooperating witnesses, informants, defendant statements, victim testimony, and other traditional methods. The jury will not need police opinion evidence to

9

synthesize such witness testimony since the government has already represented to the Court that it does not have any 404(b) evidence in this case, or other violent acts that it can attribute to Mr. Bran. Finally, this testimony will be lengthy and while is may provide an interesting history lesson for the jury, it will not aid them in making determinations about the local Richmond MS-13 clique in question in this case. In other words, the proposed testimony does not fit the facts of this case.

### C. The Sixth Amendment Concerns

The Sixth Amendment's Confrontation Clause provides that, '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." If a statement is testimonial, it is barred unless the declarant is unavailable and the defendant had the opportunity to cross-examine the declarant regarding such statement. *Crawford* v. *Washington,* 541 U.S. 36 (2004). The United States Supreme Court in *Crawford* plainly stated that the Sixth Amendment requires a live witness whom the accused has the opportunity to cross examine, if the statement is testimonial in nature. There is no "gang-expert" exception to this rule.

Expert testimony given by a law enforcement officer is subject to both evidentiary and constitutional hearsay concerns. While Fed. R. Evid. 703 allows an expert to base an opinion on hearsay evidence, it must be

> of the type reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject. . . At the same time, however, the Sixth Amendment right to confrontation bars the admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had a prior opportunity for cross examination. (citation omitted).

*United States v. Umana*, 2010 U.S. Dist. LEXIS 46910, *6 (W.D.N.C., Apr. 9, 2010). As the Fourth Circuit has noted, "[a]llowing a witness to simply parrot 'out of court statements of

cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion' would provide an end run around *Crawford*." *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009)(citing, *United States v. Lombardardozzi*, 491 F.3d 61, 72 (2d Cir. 2007). The question for the Court, before ruling on the admissibility of the expert testimony, is to determine whether the expert is "giving and independent judgment or merely acting as a transmitter for testimonial hearsay." *Id*. Again, Mr. Bran would request a pre-trial *Daubert* hearing to allow a cross-examination of the proposed expert so that any *Crawford* and Sixth Amendment issues can be addressed prior to trial.

> D. **The Admission of Proffered Testimony Would be More Prejudicial than Probative**

The government's proffered gang expert testimony, in addition to not assisting the jury in this case, will be more prejudicial than probative. Rule 403 of the Federal Rules of Evidence. When distilled, the government essentially wants to call an expert to say that MS-13 is an international gang that engages in the use of intimidation, violence and threats; kills rival gang members and obstructs the police; engages in violence; and financially supports members who have been deported. This expert will be called to simply parrot what is contained in Paragraphs 11, 12 and 13 of the Second Superseding Indictment. As stated throughout this motion, this information is not necessary for the government to prove the enterprise alleged in the indictment, and is highly prejudicial as there is no evidence that other than the two acts of violence alleged in the indictment that Mr. Bran or the Sailors clique of the MS-13 in Richmond ever engaged in any conduct that the government wishes to elicit from its expert. *See*, *United States v. Cerna*, 2010 U.S. Dist. LEXIS 62907, *23 (N.D. Cal, June 8, 2010).

11

*Conclusion*

For the reasons argued above, Mr. Bran respectfully requests this Court grant his motion to exclude the government's proposed gang expert, or in the alternative grant Mr. Bran's request for a *Daubert* hearing prior to ruling on Mr. Bran's request for exclusion of the expert.

                                      Respectfully Submitted,
                                      JOSE ARMANDO BRAN

                                    By:    /s/
                                                Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Carolyn V. Grady, Esq.
Va. Bar # 30445
Assistant Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219-1884
(804) 565-0800
(804) 648-5033 (fax)
Mary_Maguire@fd.org
Carolyn_Grady@fd.org


John A. Rockecharlie, Esq.
Va. Bar # 27701
Bowen, Champlin, Foreman & Rockecharlie
1919 Huguenot Road, Suite 300
Richmond, VA 23235
(804) 379-1900
(804) 379-5407 (fax)
JRockecharlie@Bowenlawfirm.com

# CERTIFICATE OF SERVICE

    I hereby certify that on the 28th day of February, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Roderick C. Young
Assistant U.S. Attorney
600 E. Main Street, Suite 1800
Richmond, VA 23219
(804) 819-5400
(804) 771-2316 (fax)
roderick.c.young@usdoj.gov

Andrew L. Creighton
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
(202) 531-9339
andrew.creighton@usdoj.gov



/s/
Counsel

Mary E. Maguire, Esq.
Va. Bar # 42505
Assistant Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219-1884
(804) 565-0860
(804) 648-5033 (fax)
Mary_Maguire@fd.org