

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.　　　　　　　　　　　　　　　　Criminal No. 3:12CR131

JOSE ARMANDO BRAN,

　　　　Petitioner.

### MEMORANDUM OPINION

Jose Armando Bran, a federal inmate proceeding pro se, filed this 28 U.S.C. § 2255 Motion ("§ 2255 Motion," ECF No. 365), in which he raised a single claim for relief:[1]

> Claim One:　"The Supreme Court announced a new rule of law invalidating 18 U.S.C. Section 924(c)(3)(B), thereby rendering [Bran's] conviction [for Use of a Firearm During a Crime of Violence Causing Death to Another] under Sec[tions] 924 (c) and (j) invalid." (Id. at 4.)

In support of this position, Bran cites Johnson v. United States, 576 U.S. 591 (2015), and its progeny. (§ 2255 Mot. 10-12.) Respondent has filed GOVERNMENT'S RESPONSE TO THE COURT'S ORDER AND MOTION TO DISMISS DEFENDANT'S HABEAS PETITION. ("Motion to Dismiss," ECF No. 372.) Bran has filed PETITIONER'S REPLY TO THE GOVERNMENT'S RESPONSE AND MOTION IN OPPOSITION TO DISMISS HIS HABEAS PETITION UNDER 28 U.S.C. SECTION 2255. (ECF No. 375.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization, and removes emphasis in the quotations from the parties' submissions.

Bran subsequently filed a MOTION TO SUPPLEMENT THE RECORD PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE RULE 15 ("First Motion to Amend," ECF No. 374), in which he seeks to add the following two new grounds for relief:

Proposed Ground 2: "The Court must reconsider the sufficiency of the evidence for [Bran's conviction for Murder in Aid of Racketeering ("VICAR Murder")]." (Id. at 2.)

Proposed Ground 3: "The Government failed to preserve exculpatory evidence" by deporting a possible defense witness prior to trial. (Id. at 8-9.)

Bran later filed a second MOTION TO SUPPLEMENT THE RECORD ("Second Motion to Amend," ECF No. 391), in which he points out that the Supreme Court recently invalidated the "Residual Clause" of 18 U.S.C. § 924(c)(3)(B) in United States v. Davis, 139 S. Ct. 2319, 2339 (2019). In that Motion, Bran also claims that he is "actually innocent" of the VICAR Murder conviction that he seeks to challenge in Proposed Ground 2 and appears to seek leave to bring a stand-alone claim of actual innocence to that effect.

For the reasons stated below, Johnson and its progeny do not impact the resolution of this matter. Claim One will be dismissed. The § 2255 Motion (ECF No. 365) will be denied. The Motion to Dismiss (ECF No. 372) will be granted. The First Motion to Amend (ECF No. 374) will be denied, as amendment would be futile. The new grounds for relief that Bran seeks to interpose are procedurally defaulted or otherwise lack merit. The Second Motion

to Amend (ECF No. 391) will likewise be denied, as amendment would be futile. The law does not clearly recognize a free-standing claim of actual innocence, and, in any event, Bran has failed to establish his factual innocence. Bran's MOTION FOR APPOINTMENT OF DEFENSE COUNSEL (ECF No. 392) will be denied. The action will be dismissed.

## I. PROCEDURAL HISTORY

A grand jury returned a five-count Second Superseding Indictment charging Bran, and his co-conspirators, with Conspiracy to Commit VICAR Murder, in violation of 18 U.S.C. § 1959(a)(5) (Count One); VICAR Murder, in violation of 18 U.S.C. §§ 1959(a)(1) and 2 (Count Two); Use of a Firearm During a Crime of Violence Causing Death to Another, in violation of 18 U.S.C. §§ 924(c)(1)(A) and (j) and 2 (Count Three); Conspiracy to Commit VICAR Murder, in violation of 18 U.S.C. § 1959(a)(5) (Count Four); and, Maiming in Aid of Racketeering ("VICAR Maiming"), in violation of 18 U.S.C. §§ 1959(a)(2) and 2 (Count Five). (ECF No. 49.)

All five counts were "relat[ed] to [Bran's] involvement with the street gang La Mara Salvatrucha, also known as MS-13." United States v. Bran, 776 F.3d 276, 277 (4th Cir. 2015). "Counts 1, 2, and 3 ar[o]se from the murder of Osbin Hernandez-Gonzalez." Id. "Counts 4 and 5 ar[o]se from the attempted murder of Florintino Ayala." Id.

3

A jury convicted Bran of all five counts. Id. This Court "sentenced Bran to 120 months for Count 1, mandatory life for Count 2, 120 months for Count 4, and 360 months for Count 5, all to run concurrently, and life for Count 3, to run consecutively to the sentences for Counts 1, 2, 4, and 5." Id. Bran appealed. Id.

On appeal, Bran argued, among other things, that this Court "erred by denying his motion for judgment of acquittal as to each count of conviction because the evidence was insufficient . . . ." Id. at 280 n.3. The United States Court of Appeals for the Fourth Circuit summarized the evidence, in pertinent part, as follows:

> Bran was the leader of the Richmond Sailors Set, which is a violent clique of MS-13. During Bran's involvement with the Sailors Set, the clique was a criminal enterprise engaged in drug trafficking, money transfers to MS-13 leadership in El Salvador, witness tampering, violent physical assaults - including the attempted murder of Ayala and the murder of Hernandez-Gonzalez - and other racketeering activities.
> . . . .
> . . . [I]n July 2011, Bran ordered prospective MS-13 members Jeremy Soto and Luis Cabello to murder Hernandez-Gonzalez, whom Bran believed to be an informant for a rival gang. Bran further instructed Michael Arevalo, another Sailors Set member, to ensure Soto and Cabello successfully killed Hernandez-Gonzalez. Bran gave Soto and Cabello a firearm to commit the murder. Pursuant to Bran's order, Arevalo, Soto, and Cabello led Hernandez-Gonzalez to a path along the James River, where they shot him four times using Arevalo's firearm,[2] stole his cellphone, and left him to die, which he did soon thereafter. Soto and Cabello were

---

[2] As the Fourth Circuit noted elsewhere in its opinion, "[w]hen Soto and Cabello were carrying out Bran's instruction" to kill Hernandez-Gonzalez, the gun that Bran had given them "misfired, so they used Arevalo's gun to carry out Bran's command to murder Hernandez-Gonzalez" instead. Bran, 776 F.3d at 280 n.2.

4

later initiated into the Sailors Set for their participation in the murder.

Id. at 278.

The Fourth Circuit affirmed Bran's judgments of conviction and sentence. Id. at 282. The Fourth Circuit specifically held "that the evidence [was] more than sufficient for the jury to convict [Bran] on all counts." Id. at 280 n.3.

## II. ANALYSIS

### A. Claim One

In Claim One, Bran states that "[t]he Supreme Court announced a new rule of law invalidating 18 U.S.C. Section 924(c)(3)(B), thereby rendering movant's conviction under Sec. 924 (c) and (j) invalid." (ECF No. 365, at 4.) Specifically, Bran argues that, after Johnson v. United States, 576 U.S. 591 (2015), and its progeny, his conviction in Count Three for Use of a Firearm During a Crime of Violence Causing Death to Another in violation of 18 U.S.C. §§ 924(c)(1)(A) and (j) and 2 is no longer valid, and thus, must be vacated. Bran is incorrect.

Title 18 U.S.C. section 924(c)(1)(A) provides for consecutive periods of imprisonment when a defendant uses or carries a firearm in furtherance of a crime of violence or in connection with a drug trafficking crime. The baseline additional period of imprisonment is five years. 18 U.S.C. § 924(c)(1)(A)(i). If the defendant brandishes the firearm, the additional period of imprisonment

5

increases to at least seven years. Id. § 924(c)(1)(A)(ii). If the firearm is discharged, the additional period of imprisonment increases to at least ten years. Id. § 924(c)(1)(A)(iii). And, if a person is murdered "in the course of the violation," then the defendant may "be punished by death or by imprisonment for any term of years or for life." Id. § 924(j)(1).

Until recently, the United States could demonstrate that an underlying offense constituted a crime of violence if it established that the offense was a felony and satisfied one of two requirements. Namely, the statute defined a crime of violence as any felony:

**(A)** [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another [(the "Force Clause")], or

**(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense [(the "Residual Clause")].

Id. § 924(c)(3).

In Johnson, the Supreme Court held "that imposing an increased sentence under the residual clause of the Armed Career Criminal Act [("ACCA")] violates the Constitution's guarantee of due process," 576 U.S. at 606, because the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), defined "violent felony" in an unconstitutionally vague manner because that residual clause encompassed "conduct that presents a serious potential risk of

6

physical injury to another." Id. at 597-98 (citation omitted). Subsequently, in Welch v. United States, 136 S. Ct. 1257 (2016), the Supreme Court held that "Johnson announced a substantive rule [of law] that has retroactive effect in cases on collateral review." Id. at 1268. Most recently, the Supreme Court has extended the rationale of Johnson to invalidate the Residual Clause of 18 U.S.C. § 924(c)(3)(B) in United States v. Davis, 139 S. Ct. 2319, 2339 (2019).

However, in this instance, Davis does not require that Count Three be disturbed. Bran's conviction does not rest upon the Residual Clause. Rather, Bran's conviction for Count Three is rooted securely in the Force Clause, which was not implicated by Davis, or any of the other cases that have grown out of Johnson.

The Fourth Circuit recently provided the following guidance for determining whether a particular offense qualifies as a crime of violence under the Force Clause:

> To determine whether an offense qualifies as a crime of violence under Section 924(c)(3)(A), we apply the categorical approach or the modified categorical approach, depending on the nature of the offense. Id. The categorical approach focuses "on the elements of the prior offense rather than the conduct underlying the conviction." United States v. Cabrera-Umanzor, 728 F.3d 347, 350 (4th Cir. 2013) (citation omitted). Thus, we do not inquire "whether the defendant's conduct could support a conviction for a crime of violence" but instead inquire "whether the defendant was in fact convicted of a crime that qualifies as a crime of violence." Id.
> In a "narrow range of cases," involving statutes that are comprised of "multiple, alternative versions of the crime," we apply the modified categorical approach.

7

> Descamps v. United States, 570 U.S. 254, 261-62, 133 S. Ct. 2276, 186 L.Ed.2d 438 (2013) (citing Taylor v. United States, 495 U.S. 575, 602, 110 S. Ct. 2143, 109 L.Ed.2d 607 (1990)). When confronted with such a "divisible" statute, we review certain underlying documents, including the indictment, "to determine what crime, with what elements," formed the basis of a defendant's conviction. Mathis v. United States, --- U.S. ----, 136 S. Ct. 2243, 2249, 195 L.Ed.2d 604 (2016) (citations omitted).
> With this framework in mind, we turn to consider each predicate offense underlying the defendants' Section 924(c) convictions.

United States v. Mathis, 932 F.3d 242, 264 (4th Cir. 2019).

In Mathis, the Fourth Circuit applied this framework to determine whether a predicate offense of VICAR murder, based upon Virginia's murder statute, qualified as a crime of violence under the Force Clause. Id. at 264-65. The categorical approach applied because Virginia Code § 18.2-32 is indivisible. Id. at 264 n.19. The Fourth Circuit rejected the contention that VICAR murder did not qualify as a crime of violence because "a defendant can violate the statute by using non-violent, indirect means, such as poisoning." Id. at 264 (internal quotation marks and alterations omitted). The Fourth Circuit held that:

> This line of reasoning . . . is foreclosed by the Supreme Court's decision in United States v. Castleman, in which the Court held that "physical force is simply force exerted by and through" human action and that, therefore, a person need not "directly" touch his victim to exert "physical force." 572 U.S. 157, 170-71, 134 S. Ct. 1405, 188 L.Ed.2d 426 (2014) (citations and internal quotation marks omitted). Accordingly, so long as an offender's use of physical force, whether direct or indirect, could cause a violent result, the force used categorically is violent. See id. at 1415; see

8

>         also In re Irby, 858 F.3d 231, 236, 238 (4th Cir. 2017)
> (holding that second-degree retaliatory murder is a
> crime of violence under Section 924(c)'s force clause
> and noting that the "distinction . . . between indirect
> and direct applications of force . . . no longer remains
> valid in light of Castleman's explicit rejection of such
> a distinction") (citations and internal quotation marks
> omitted).
>         . . . Murder "requires the use of force capable of
> causing physical pain or injury to another person"
> irrespective whether that force is exerted directly or
> indirectly by a defendant. See In re Irby, 858 F.3d at
> 236, 238.

Id. at 264-65 (second and third omissions in original). The Fourth Circuit concluded that VICAR murder premised on Virginia's murder statute "qualifies categorically as a crime of violence under the force clause," and affirmed the conviction. Id. at 265.

The Fourth Circuit's decisions in Mathis and In re Irby compel the conclusion that Bran's conviction in Count Two for VICAR Murder serves as a valid predicate offense for his conviction in Count Three for Use of a Firearm During a Crime of Violence Causing Death to Another. As in Mathis and In re Irby, Bran's VICAR Murder charge was premised on Virginia Code § 18.2-32. (See ECF No. 49, at 10.) Thus, Bran's VICAR Murder conviction in Count Two "qualifies categorically as a crime of violence under the force clause." Mathis, 932 F.3d at 265.

The fact that Bran may have been charged and convicted under a theory of aiding and abetting VICAR murder does nothing to change the relevant analysis. "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or

9

procures its commission is punishable as a principal." 18 U.S.C. § 2(a). Indeed, as the Fourth Circuit recently reaffirmed, "[a]iding and abetting is not a standalone criminal offense-rather, it 'simply describes the way in which a defendant's conduct resulted in the violation of a particular law.'" United States v. Ali, 991 F.3d 561, 574 (4th Cir. 2021) (quoting United States v. Ashley, 606 F.3d 135, 143 (4th Cir. 2010)). As the Fourth Circuit stated:

> [18 U.S.C.] Section 2 does not set forth an essential element of [an] offense, so aiding and abetting a crime has the exact same elements as the principal offense. Because there are no new elements on which the categorical approach can operate, it is impossible for the analysis of aiding and abetting a crime to come out differently than the principal crime. Therefore, aiding and abetting a crime of violence is also categorically a crime of violence.

Id. (second alteration in original, internal quotation marks and citation omitted).

Despite Bran's suggestion to the contrary, it truly does not matter that Bran did not pull the trigger. See id. (observing that "the acts of the principal become those of the aider and abettor as a matter of law" (quoting In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016))). Bran provided a firearm to two MS-13 prospects, who were eager to earn his approval, so that they could join his gang, and he instructed them to kill Hernandez-Garcia. See Bran, 776 F.3d at 280. Apparently unconvinced that the two prospects could carry out his order, Bran tasked an underling in

10

his gang with accompanying them to "ensure the murder was successful." Id. Simply put, Bran's words and his actions caused the "use of force capable of causing physical pain or injury," Mathis 932 F.3d at 265 (quoting In re Irby, 858 F.3d at 236, 238), as surely as if he had pulled the trigger himself.

Bran makes much of the fact that the firearm that he provided to the two prospects misfired, and that a weapon carried by Arevalo was used instead to shoot Hernandez-Gonzalez. (See ECF No. 375, at 6.) Bran cites to the Supreme Court's opinion in Rosemond v. United States, 572 U.S. 65 (2014), to substantiate his belief that "a defendant must have advanced knowledge of the firearm used to commit the underlying crime," in order to be found in violation of 18 U.S.C. § 924(c). (Id. (emphasis added).)

Bran fundamentally misapprehends Rosemond and attempts to twist its plain language to achieve an illogical result. In Rosemond, the Supreme Court held that, in order to obtain a conviction under 18 U.S.C. § 924(c), the Government must "prov[e] that the defendant actively participated in the underlying drug trafficking or violent crime with advanced knowledge that a confederate would use or carry a gun during the crime's commission." 572 U.S. at 67 (emphasis added). In order to make his point, Bran substitutes the phrase "the firearm," in place of the phrase actually used in Rosemond, "a gun." In so doing, Bran attempts to graft on an additional requirement that a specific

11

firearm be used in the commission of ensuing crime, a level of particularity, which the Supreme Court never required.

Here the evidence clearly demonstrates that Bran knew "a gun" would be used to carry out the murder of Hernandez-Gonzalez. Bran provided "a gun" to the two MS-13 prospects so that they could carry out his order to kill. See Bran, 776 F.3d at 280. Further, Bran ordered an underling to oversee the endeavor to "ensure the murder was successful." Id. Given the nature of the task that he had assigned, Bran certainly could understand that his underling would take a back-up weapon, so that he could comply with Bran's instruction and "ensure the murder was successful." Id. In any event, Bran's argument finds no support in Rosemond, or in any other authority.

Thus, in accordance with In re Irby, Mathis, and Ali, Bran's VICAR Murder charge in Count Two qualifies as a crime of violence under the Force Clause, and neither Davis, nor any of Johnson's progeny, do anything to alter that result. Therefore, Bran's conviction in Count Three under § 924(c) and (j) remains valid because it is based upon an adequate predicate offense, VICAR Murder. Accordingly, Claim One lacks merit and will be dismissed.

### B. First Motion to Amend

In the First Motion to Amend, Bran seeks to add two new claims to his § 2255 Motion. (ECF No. 374, at 2, 8.) "Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue

prejudice to the opposing party, or futility of amendment." United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted). For the reasons stated below, amending Bran's § 2255 Motion at this juncture would be futile.

### 1. Proposed Ground 2

On direct appeal, the Fourth Circuit held "that the evidence [was] more than sufficient for the jury to convict [Bran] on all counts." Bran, 776 F.3d at 280 n.3. Nevertheless, Bran suggests in the First Motion to Amend that this Court "must reconsider the sufficiency of the evidence for Count 2." (ECF No. 374, at 2.)

"It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." United States v. Linder, 552 F.3d 391, 397 (4th Cir. 2009) (quoting United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001)); see also Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding that a petitioner cannot "recast" on collateral review issues that were rejected on direct appeal). Moreover, a movant cannot escape this procedural bar by "marginally reformulat[ing]" a claim decided against him on direct appeal. United States v. Caro, 733 F. App'x. 651, 659-61 (4th Cir. 2018) (rejecting the notion that a claim cannot be procedurally barred on collateral review unless it includes "exactly the same arguments raised on direct appeal").

13

Bran fails to point to any intervening change in the law since his conviction that would warrant the reexamination by this Court of the Fourth Circuit's determination that the evidence was sufficient to support Bran's conviction. See United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004). Consequently, if amendment were allowed, Bran's challenge to the sufficiency of the evidence would be barred from review.³ Accordingly, because amendment would be futile at this juncture, the First Motion to Amend will be denied as to Bran's Proposed Ground 2.

### 2. Proposed Ground 3

In Proposed Ground 3, Bran seeks to interpose a claim that the Government prevented him from obtaining potentially exculpatory evidence by deporting a possible defense witness prior to trial. (ECF No. 374, at 8-9.) This claim was litigated before trial after Bran filed a MOTION IN LIMINE TO DISMISS THE SECOND SUPERSEDING INDICTMENT. (ECF Nos. 213 (sealed), 271 (redacted).) At that time, the Court declined to dismiss the indictment, but granted the motion to the extent it sought a "missing witness" instruction. United States v. Bran, 950 F.Supp.2d 863, 876 (E.D. Va. 2013). Bran did not appeal this issue to the Fourth Circuit

---

³ Moreover, as summarized in the Fourth Circuit's opinion, ample evidence was presented at trial to establish Bran's guilt. See Bran, 776 F.3d at 278. Thus, even if the Court were to reach the merits of Bran's claim, the ultimate result would be the same.

14

and the Government argues that he is now procedurally barred from raising the issue in his § 2255 Motion. (ECF No. 397, at 5.)

When a movant could have raised, but failed to raise, a particular claim on direct appeal, that claim is barred from review in a § 2255 proceeding, absent a showing by the movant of cause and prejudice or actual innocence. See Bousley v. United States, 523 U.S. 614, 622-23 (1998). Bran has failed to show that cause and prejudice exist, much less that he is actually innocent of any of the crimes for which he was convicted.[4]

Consequently, even if leave to amend were granted, this claim would be defaulted and dismissed in any event. Accordingly, because leave to amend would be futile at this juncture, the First Motion to Amend will be denied as to Bran's Proposed Ground 3.

---

[4] Bran fails to assert a reason why this claim was not raised on direct appeal. Because Bran fails to show cause, the Court need not address prejudice. See Breard v. Pruett, 134 F.3d 615, 620 (4th Cir. 1998) (citation omitted). Moreover, Bran fails to establish that he is actually innocent. To establish actual innocence, Bran must demonstrate "factual innocence, not mere legal insufficiency of his conviction." Bousley, 523 U.S. at 623-24 (citation omitted); United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1992) (indicating that a petitioner must establish "actual factual innocence"). To the extent that Bran contends that he is actually innocent of Count Two, his arguments are based on his own interpretation of the law, not the facts of this case, or any new developments related thereto. Thus, as discussed in Section II(C), infra, at most, Bran argues the legal sufficiency of his conviction(s). Moreover, Bran fails to identify, except in the most conclusory of terms, exactly how he believes the deported witness' testimony may have impacted the resolution his case. Bran does not even proffer exactly what he believes this witness' testimony would be. Accordingly, even if the Court were to reach the merits of this claim, it would still fail.

### C. Second Motion to Amend

In the First Motion to Amend, Bran clearly sought to add new claims to his § 2255 Motion; however, Bran's intentions in the Second Motion to Amend are somewhat less clear. Bran begins the Second Motion to Amend by pointing out the Supreme Court's recent decision in Davis. To the extent that Bran intended to interpose a new claim based on Davis, that request must be denied for the reasons discussed in Section II(A), supra. As discussed above, Davis has no bearing on this matter, as Bran's conviction in Count Three was based on the Force Clause, rather than the Residual Clause, which Davis invalidated. Accordingly, the Second Motion to Amend will be denied to the extent that it sought to interpose an independent claim under Davis because such an amendment at this juncture would be futile.

In the Second Motion to Amend, Bran also restates the same specious arguments that he previously made concerning the Supreme Court's decision in Rosemond, in yet another attempt to escape the consequences of his conviction for VICAR Murder in Count Two. As discussed in Section II(A), supra, Bran misunderstands and misapplies Rosemond. Nonetheless, Bran appears to repackage that baseless argument as a stand-alone claim of actual innocence. However, even if viewed through the lens of an actual innocence claim, Bran's position still lacks merit.

16

As an initial matter, "[t]he Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence." Lund v. United States, 913 F.3d 665, 668 (7th Cir. 2019) (quoting Gladney v. Pollard, 799 F.3d 889, 895 (7th Cir. 2015)). In the usual case, "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations. McQuiggin v. Perkins, 569 U.S. 383. 386 (2013). However, "it is 'doubtful' that a petitioner's actual innocence claim and claim for relief on the merits can be the same." Lund, 913 F.3d at 668 (quoting Perrone v. United States, 889 F.3d 898, 903 (7th Cir. 2018)); see also Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2006) ("the Supreme Court has strongly suggested that claims of actual innocence standing alone do not serve as an independent basis for habeas relief" (citing Herrera v. Collins, 506 U.S. 390, 400 (1993))).

Even if the Court were to find that there is in theory a stand-alone claim of actual innocence (a question that the Court does not decide here), Bran would nevertheless still be required to demonstrate his "factual innocence, not mere legal insufficiency of his conviction." Bousley, 523 U.S. at 623-24 (citation omitted); Mikalajunas, 186 F.3d at 494. Here, Bran's argument relates solely to what he incorrectly perceives to be the legal insufficiency of his conviction in Count Two. Bran offers

17

nothing new to establish that he is factually innocent of VICAR Murder. To the contrary, the evidence, as summarized by the Fourth Circuit, see Bran, 776 F.3d at 278, overwhelmingly indicates that Bran is guilty in every sense of that word.

Bran, a leader in MS-13, suspected that Hernandez-Gonzalez was an informant for a rival gang. Id. Based upon that suspicion, Bran ordered two prospective members of the gang to kill Hernandez-Gonzalez. Id. Unwilling to leave anything to chance, Bran ordered an underling in the gang to oversee the endeavor to "ensure the murder was successful." Id. at 278, 280. Following his instructions, Bran's subordinates marched Hernandez-Gonzalez down a path into the woods where they shot him four times, robbed him, and left him to die. Id. at 278. As a reward for their efforts, the two prospects were initiated into Bran's gang. Id.

Bran's repackaging of this claim is also problematic because, as the preceding passage makes clear, it requires this Court to reexamine the Fourth Circuit's determination that "that the evidence [was] more than sufficient for the jury to convict [Bran] on all counts." Bran, 776 F.3d at 280 n.3. As discussed in Section II(B)(1), supra, absent new evidence, which Bran has not provided, Bran is procedurally barred from relitigating matters already decided on appeal. See Caro, 773 F. App'x at 660 (alterations in original) ("[I]n the absence of newly discovered evidence that could not reasonably have been presented at the

18

original trial . . . a § 2255 petitioner may not relitigate issues that were adjudicated at his original trial and on direct appeal." (quoting United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979))).

In any event, assuming that Bran were allowed to bring a stand-alone claim of actual innocence, which remains "doubtful," see Lund, 913 at 668 (citation omitted), his claim would ultimately fail in any event, because Bran has failed to point to any new evidence, or otherwise demonstrated his factual innocence. Accordingly, the Second Motion to Amend will be denied to the extent it sought to interpose a free-standing claim of actual innocence to VICAR Murder, as such an amendment would be futile.

### D. Motion for Appointment of Counsel

Finally, Bran has moved this Court for appointment of counsel. No constitutional right to court-appointed counsel exists in post-conviction proceedings. Mackall v. Angelone, 131 F.3d 442, 449 (4th Cir. 1997). The Court, however, may appoint counsel to a financially eligible person if justice so requires. See 18 U.S.C. § 3006A(a)(2)(B). For example, appointment of counsel for an indigent petitioner is appropriate in a 28 U.S.C. § 2255 action when necessary for utilization of discovery procedures or when an evidentiary hearing is required. See Rules Governing Section 2255 Proceedings for the U.S. District Courts, Rules 6(a) and 8(c). Upon review of Bran's motion, the Court concludes that the issues

19

in this matter are not complex and the interests of justice do not require the appointment of counsel. Accordingly, the motion for appointment of counsel will be denied.

### III. CONCLUSION

The § 2255 Motion (ECF No. 365) will be denied. The Motion to Dismiss (ECF No. 372) will be granted. Claim One will be dismissed. The First Motion to Amend (ECF No. 374), the Second Motion to Amend (ECF No. 391), and the Motion for Appointment of Counsel (ECF No. 392) will be denied. The action will be dismissed. A certificate of appealability will be denied.[5]

The Clerk is directed to send a copy of this Memorandum Opinion to Bran and counsel of record.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Date: September 7, 2021
Richmond, Virginia

---

[5] An appeal may not be taken from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 & n.4 (1983)). Bran has not met this standard.